BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
RYAN WATERS (Cal. Bar No. 268015)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3111
    Facsimile: (213) 894-6269
    E-mail: ryan.waters@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-cv-6886 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 |
| $82,522.29 IN BANK FUNDS, | |
| Defendant. | [U.S.S.S.] |

    Plaintiff United States of America brings this claim against defendant $82,522.29 in Bank Funds, and alleges as follows:

### JURISDICTION AND VENUE

    1.   The government brings this _in_ _rem_ civil forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

    2.   This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4.    The plaintiff in this action is the United States of America.

5.    The defendant in this action is $82,522.29 in Bank Funds seized pursuant to a federal seizure warrant on February 11, 2025, from a Cathay Bank account with the last four digits ending in 2315 ("Cathay Account 2315"), held in the name of Aly Trade Limited (the "defendant bank funds").  The defendant bank funds were seized at Cathay Bank, 4128 Temple City Blvd., Rosemead, CA 91770.

6.    The defendant bank funds are currently in the custody of the United States Secret Service ("USSS") in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.    The interests of Aly Trade Limited, and the victims identified herein as A.M., B.W., E.S., J.S., N.P., R.H., R.P., S.A., T.A., T.C., and T.O. may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

*Background on Confidence Frauds*

8.    A "confidence fraud" involves a victim transferring money and/or property as a result of being deceived or misled by the offender. Often a fraudster deceives a victim into believing they have a close relationship--whether familial, friendly, or romantic-- and leverages that relationship to persuade the victim to send money, provide personal and financial information, and/or purchase items of value.

9.    Victims of confidence frauds often do not recognize that they are being defrauded for many months or more, and sometimes never

2

recognize that they have been defrauded, because they are, or believe they are, in a legitimate relationship with the person making the false claims or promises to them.  Therefore, it is not uncommon to observe multiple wires and transfers being sent to the same beneficiary or multiple beneficiaries over a period of time.  Some victims of confidence frauds are not completely truthful with, or seek to impede, law enforcement officers who question them about the money they have transferred, in part to protect their purported friend.

10.  Sometimes digital currency, also known as "crypto currency," "cryptocurrency" and "virtual currency," is used in confidence frauds.  Digital currency is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e., currency created and regulated by a government), but unlike fiat currency has no physical form and instead exists entirely on the internet.  In addition, digital currency is generated and controlled through computer software operating on a decentralized peer-to-peer network.  Digital currency is often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership or control of illegally obtained criminal proceeds. Bitcoin is one of the most commonly used digital currencies.

11.  A digital currency exchange (an "exchange") is a brick-and-mortar or online business that allows customers to trade digital currencies for fiat currencies or other digital currencies.  Most exchanges are located outside the United States in order to avoid regulation and legal requirements.  Coinbase, which operates in the United States, is one of the largest and most popular exchanges.

1
*The Law Enforcement Investigation in This Case*

2   12.   The USSS has investigated a confidence fraud whereby
3  multiple victims transferred funds based on fraudulent pretenses into
4  Cathay Account 2315 from which the defendant bank funds were seized.
5  As part of the investigation, the USSS learned the information set
6  forth below.

7
*Victim R.H. is Defrauded*

8   13.   In February 2024, R.H. met a female, who went by the name
9  Ella, in a Facebook cryptocurrency investment chat room BigOuz.biz.
10 R.H. and Ella developed a quick friendship and communicated on a
11 weekly basis via text using the messaging application WhatsApp over
12 the next several months. Ella told R.H. she was from China and had a
13 clothing company in California.

14   14.   Ella encouraged R.H. to invest in crypto currency and told
15 him to use the crypto trading platform called BigoPro. R.H. decided
16 to invest and would log onto the BigoPro website and obtain bank
17 account and routing information of where to send the funds from a
18 customer service representative. To send the money, R.H. used Cash
19 App, a mobile banking application.

20   15.   On March 6, 2024, R.H. transferred $83,000.00 to Cathay
21 Account 2315, and sent additional funds to other bank accounts, for a
22 total investment at the time of approximately $150,000.00.  In March
23 2024, Ella asked R.H. to invest an additional $41,000.00 to increase
24 his purported account balance near $300,000.00. When R.H. was unable
25 to invest the $41,000.00, Ella told R.H. she called her aunt in New
26 York who would loan R.H. $41,000.00.

27   16.   On March 21, 2024, R.H. received an email from BigoPro
28 stating the $41,000.00 transaction has been completed and now

4

reflected in his investment account at BigoPro. R.H. was urged by Ella to now contact online customer service to schedule repayment of the $41,000.00, so that he could withdraw all the funds in his BigoPro account. He was advised to withdraw all the funds in his account within seven working days or the system would automatically "freeze" his account. R.H. was unable to invest any additional funds and never received any funds from his purported balance at BigoPro.

### *Victim T.C. is Defrauded*

17.   In November 2023, T.C. received a text from a female who went by the name of Mia. He began to communicate with Mia daily via text messages.  Mia told T.C. she was from China and living in New York.

18.   Mia eventually told T.C. she invested in crypto currency and encouraged T.C. to invest as well. Mia told T.C. to use a crypto currency website trading platform called CoinDesk and she would educate him on crypto currency investing. In February 2024, T.C. transferred $10,392.00 to Cathay Account 2315.

19.   T.C. was provided bank account information via text message from a customer service representative on the CoinDesk.com website. T.C. was also told that after receiving banking information, he must transfer funds immediately or contact customer service to obtain new banking account information to avoid a penalty. When T.C. attempted to withdraw his money, he was told there would be a 10% penalty and

has subsequently been unable to withdraw funds from his purported balance.

### *Victim J.S. is Defrauded*

20. In early 2023, J.S. received an unsolicited text from a woman who went by the name of Jenny. Jenny initiated a conversation with him, and they began to communicate daily via the messaging application Telegram. Jenny stated she worked in financial investments for her uncle at IDH in Boston, MA.

21. Jenny convinced J.S. to invest in cryptocurrency and to create an account with CEX.  In February 2024, J.S. decided to invest in CEX and transferred $10,030.00 to Cathay Account 2315.

22. From this point forward, all investments were completed using cryptocurrency. J.S. created an account with Exodus to send investments using the blockchain. Jenny stated there was a cryptocurrency node to be released but that it would require an initial $30,000.00 investment. The investment amount increased to $75,000.00 shortly thereafter at the suggestion of Jenny. When the node increased to $300,000.00, J.S. was told by a customer service representative that J.S. would have to pay $86,000.00 as a "guarantee". When J.S. told Jenny about the guarantee, she told J.S. this was normal.

23. At this point, J.S. suspected this was a fraud scheme and wanted to withdraw the earnings. Jenny stated she would cover the guarantee and J.S. could pay her with his earnings, but first J.S. had to increase his investment to $110,000.00. Once J.S. paid additional funds, he was told by Customer Service that he would now

have to pay the future taxes on the account earnings of $79,000.00. At this point, J.S. was more convinced this was a scam and wanted to withdraw all the initial investment and earnings. Jenny assured J.S. that it was normal, and she claimed to have paid $53,000.00 of the taxes. J.S. paid the $26,000 difference. At this point, J.S. had invested approximately $140,000.00 of his funds.

24.    J.S. initiated a withdrawal of his purported balance of $275,000.00 from his CEX investment account, but the funds were never deposited to his Bank of America bank account. When J.S. contacted customer service, he was told the funds were intercepted by a third-party agency. The last contact J.S had with Jenny was on May 14, 2024, and on Friday, May 17, 2024, J.S. learned that Jenny had deleted her Telegram account.

*Tracing Fraud Proceeds into Cathay 2315*

25.    The following fraudulent proceeds, described above, were deposited into Cathay Account 2315:

> a.    On March 6, 2024, a $83,000.00 wire from victim R.H.;
>
> b.    On February 23, 2024, a $10,392.00 wire from victim T.C.; and
>
> c.    On February 26, 2024, a $10,030.00 wire from victim J.S.

26.    In addition, the USSS has identified 7 additional suspicious deposits into Cathay Account 2315 but has been unsuccessful in contacting and interviewing the individuals associated with the suspicious deposits/transfers and believed to be victims of this scheme.  These other presumed victims made

$137,000.00 in suspicious deposits into Cathay Account 2315 (the "Additional Deposits").

27.  The Additional Deposits share similarities with the above-described fraud victim transfers into Cathay Account 2315, in that they (1) were made in the same time period as the above-described transfers of fraud proceeds; (2) were made from individuals in locations throughout the United States without the kind of geographic patterns that might be expected from a legitimate business; (3) were made from people who had not previously deposited funds in Cathay Account 2315; and (4) were made in large round-dollar amounts, which are inconsistent with normal business transfers (which typically reflect taxes and other costs). Accordingly, the Additional Deposits are also fraud proceeds from victims of this scheme.

## FIRST CLAIM FOR RELIEF

28.  Based on the facts set out above, plaintiff United States of America alleges that the defendant bank funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).  The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

**SECOND CLAIM FOR RELIEF**

29.    Based on the facts set out above, plaintiff United States of America alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud).  The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

**THIRD CLAIM FOR RELIEF**

30.    Based on the facts set out above, plaintiff United States of America alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud).  The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

1      WHEREFORE, plaintiff United States of America prays that:

2      (a)  due process issue to enforce the forfeiture of the

3  defendant bank funds;

4      (b)  due notice be given to all interested parties to appear and

5  show cause why forfeiture should not be decreed;

6      (c)  this Court decree forfeiture of the defendant bank funds to

7  the United States of America for disposition according to law; and

8      (d)  for such other and further relief as this Court may deem

9  just and proper, together with the costs and disbursements of this

10  action.

11  Dated: July 28, 2025                    BILAL A. ESSAYLI
                                            United States Attorney
12                                          CHRISTINA T. SHAY
                                            Assistant United States Attorney
13                                          Chief, Criminal Division
                                            JONATHAN GALATZAN
14                                          Assistant United States Attorney
                                            Chief, Asset Forfeiture and Recovery
15                                          Section

16

17                                             /s/ Ryan Waters
                                            _____
                                            RYAN WATERS
18                                          Assistant United States Attorney

19                                          Attorneys for Plaintiff
                                            United States of America
20

21

22

23

24

25

26

27

28

10

VERIFICATION

I, Fred Apodaca, hereby declare that:

1.    I am a Special Agent with the United States Secret Service.

2.    I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3.    Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed July 25, 2025 in Los Angeles, California.


FRED APODACA
Special Agent